FILED ✓   RECEIVED
ENTERED   SERVED ON
COUNSEL/PARTIES OF RECORD

AUG - 6 2009

CLERK US DISTRICT COURT
DISTRICT OF NEVADA
BY: _____ DEPUTY

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

PAUL S. KLEIN,

      Plaintiff,

vs.

REID KIMOTO, *et al.*,

      Defendants.

)
)
)
)
)
)
)
)
)
)
)

3:08-cv-00191-ECR-VPC

**REPORT AND RECOMMENDATION**
**OF U.S. MAGISTRATE JUDGE**

August 5, 2009

This Report and Recommendation is made to the Honorable Edward C. Reed, Jr., United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4.

Before the court is defendant Reid Kimoto's motion to dismiss (#128). Plaintiff opposed (#174), and defendant replied (#178).[1] For the reasons stated below, the court recommends that defendant Kimoto's motion to dismiss (#128) be granted.

## I. HISTORY & PROCEDURAL BACKGROUND

Plaintiff Paul Scott Klein ("plaintiff"), a *pro se* prisoner, is currently incarcerated by the Nevada Department of Corrections ("NDOC") at Lovelock Correctional Center ("LCC") (#127). Plaintiff brought his original action pursuant to 42 U.S.C. § 1983, alleging that prison officials violated his First Amendment right to free speech, his Eighth Amendment right against cruel and unusual punishment, and his Fourteenth Amendment rights to equal protection and due process while he was incarcerated at Southern Desert Correctional Center ("SDCC") (#27). *Id.* p. 9-49. Plaintiff also brings numerous state tort claims, including assault, battery, sexual harassment, coercion of witnesses, witness tampering, obstruction of justice, negligent release of confidential

---

[1] Plaintiff also filed a motion to strike defendant Reid Kimoto's motion to dismiss, claiming that such motion was untimely (#138). Defendant was granted an extension of time to file an answer or other responsive pleading (#112), and timely filed his motion to dismiss on January 28, 2009 (#128). Moreover, plaintiff has acknowledged his error and consented to the denial of his motion to strike (#155). Therefore, plaintiff's motion to strike (#138) is denied.

1  information about plaintiff, intentional interference with plaintiff's interest in seclusion, false

2  light, intentional infliction of emotional distress, and intentional deprivation of plaintiff's civil

3  rights. *Id.*     Plaintiff names as defendants Reid Kimoto, principal of the Southern Desert

4  Correctional Adult High School; Brian Williams, SDCC warden, Cheryl Burson, SDCC associate

5  warden; Jeffrey Patterson, SDCC associate warden; Lavert Taylor, Chaplain at SDCC; Vincent

6  Hain, Michael Maxfield, and Maryann Marsh, caseworkers at SDCC; Howard Skolnik, NDOC

7  director; Leo Vath, maintenance worker at SDCC, Anthony Digiralamo, maintenance supervisor

8  at SDCC; Paul Wheelock; David Grusman; Fred Tocco, former shop manager at SDCC, and Eric

9  Burson, Roy Plumlee, William Shubert, James Figueroa, James Brill, David Magnum, Gina Hain,

10 and Tracy Dory, correctional officers at SDCC.

11        Plaintiff asserts sixteen counts of alleged constitutional and state law violations. Counts

12 1 through 13 arise from plaintiff's allegations that defendant Taylor sexually harassed him, and

13 defendants' actions responding to plaintiff's subsequent grievance. Counts 14 and 15 arise from

14 plaintiff's alleged reporting of problems with the fire and smoke warning systems at SDCC, and

15 plaintiff's termination from his employment. Count 16 arises from plaintiff's placement in

16 administrative segregation, allegedly without adequate due process. Of these 16 counts, only

17 counts 3, 4, 5, 6, 7, 8, 9, and 12 pertain to defendant Kimoto. These counts are summarized in

18 more detail, as follows:

19        **Count 3 - "Sexual Harassment and Harassment."** Plaintiff re-alleges that defendant

20 Taylor approached him, and states that defendant Taylor sexually harassed and assaulted him

21 when he "without authority, permission, and without a penological interest did the following with

22 sexual intent, touch plaintiff, physically press his body against plaintiff, rubbed his back between

23 his shoulder blades and finished by running his hand through plaintiff's hair and telling plaintiff

24 his hair was soft and asking when did plaintiff cut it." *Id.* p. 12. Plaintiff also alleges that at some

25 time prior to this incident, defendants Williams, Cheryl Burson, and Patterson told defendants

26 Kimoto and Taylor that plaintiff was homosexual. Therefore, plaintiff was not to be left alone

27 with teachers. *Id.*

28        **Count 4 - "Coercion, Coercing Witnesses, Witness Tampering, and Obstruction of**

1    **Justice."** Plaintiff asserts that, after plaintiff filed a complaint against defendant Taylor based

2    upon the allegations in count I-III, defendant Taylor coerced witnesses to change their statements

3    regarding his actions. *Id.* Plaintiff claims that defendants Williams, Cheryl Burson, and Patterson

4    conspired to enlist defendant Kimoto to aid in dismissing plaintiff's complaint against defendant

5    Taylor and to punish plaintiff in retaliation for filing the complaint. *Id.* p. 15. Specifically,

6    defendant Kimoto threatened Chris Schofield and Charles Smith, both witnesses to defendant

7    Taylor's harassment of plaintiff, that they would lose their jobs at SDCC if they gave statements

8    against defendant Taylor. *Id.* Therefore, all witnesses denied having seen defendant Taylor's

9    conduct. Plaintiff also claims that defendants Cheryl Burson, Patterson, and Williams disclosed

10   the contents of his grievance against defendant Taylor, which was confidential, in violation of

11   Administrative Regulation 740. *Id.*

12        **Count 5 - "Retaliation for Exercising First Amendment U.S. Constitutional Free**

13   **Speech, Access to Courts, Due Process, and Equal Protection Rights."** Plaintiff claims that

14   defendants Cheryl Burson, Patterson, Williams, Taylor, and Kimoto entered into a conspiracy to

15   retaliate against plaintiff for filing a sexual harassment complaint against defendant Taylor. *Id.*

16   p. 18. Plaintiff states that after he filed his grievance against defendant Taylor, defendants C.

17   Burson, Williams, and Patterson met with defendant Kimoto "and enlisted his assistance in

18   getting plaintiff discredited by coercion of teacher C. Schofield." *Id.* p. 19. Plaintiff asserts that

19   defendants did not have the authority to disclose his grievance to defendant Kimoto; therefore,

20   they "retaliated against plaintiff's use of the [grievance system] by violating the confidentiality

21   provisions and process provisions of AR 740," and by coercing a school district employee to give

22   a false statement. *Id.*

23        **Count 6 - "Negligence."** Plaintiff alleges that defendants Williams, C. Burson, Patterson,

24   and Maxfield were negligent when they released confidential information from plaintiff's

25   grievance against defendant Taylor, and plaintiff's sexual orientation, "for purposes of interfering

26   with a sexual harassment complaint." *Id.* p. 21-22. Plaintiff also claims that defendant Kimoto

27   disclosed plaintiff's sexual orientation to other teachers, which constituted "intentional

3

28

1  interference with another's interest in solitude or seclusion." *Id.* p. 22.

2       **Count 7 - "Intentional Interference with Plaintiff's Interest in Solitude and/or**

3  **Seclusion."** As in count VI, plaintiff contends that defendants Williams, C. Burson, and Patterson

4  disclosed his sexual orientation to defendant Kimoto and that defendant Kimoto disclosed this

5  same information to other teachers, and that such conduct violated plaintiff's privacy rights. *Id.*

6  p. 23-25.

7       **Count 8 - "Law of False Light."** Again, plaintiff alleges that defendants Williams, C.

8  Burson, and Patterson "enlisted Reid Kimoto's assistance with gaining a false statement from C.

9  Schofield for purpose[s] of making plaintiff's complaint untrue and false." *Id.* p. 26. Further,

10  defendant Kimoto disclosed plaintiff's sexual orientation to other teachers, and told teachers that

11  "plaintiff would set them up for false allegations of sexual misconduct and ordered teachers to

12  never remain alone with plaintiff in the classrooms, making plaintiff appear to be a greater danger

13  homosexually than any other inmate employed in the education department." *Id.* p. 27. Such

14  statements portrayed plaintiff in a "false light." *Id.*

15       **Count 9 - "Willful, Intentional and Deliberate with Malice Aforethought or Without**

16  **Malice Deprivation of Civil Rights."** Plaintiff restates his allegations from counts 1-9 and

17  claims that defendants Williams, C. Burson, Maxfield, Patterson, and Taylor violated his rights

18  to "due process, equal treatment/protection, not to be subjected to assault, battery, harassment,

19  sexual harassment, coercion, threats, interference with pursuit of justice, cruel and unusual

20  punishment, malice, negligence, slander, false light, and interference with right and interest in

21  solitude and/or seclusion coupled with First Amendment freedom of speech without fear of

22  retaliation." *Id.* p. 29.

23       **Count 12 - "Due Process, Procedural Due Process and Equal Treatment Clauses of**

24  **the 1st, 5th, 6th, 8th, and 14th Amendments of the U.S. Constitution as they Involve Counts I**

25  **though II of this Complaint."** Plaintiff states that he "has addressed all of the due process and

26  equal protection violations fully in Counts 1 through 11 as they pertain to defendants B. Williams,

27  C. Burson, M. Maxfield, Mr. Patterson and Mr. R. Kimoto and are connected to the events of

28  June 5th, 2007." *Id.* p. 35.

1        "Plaintiff's claims against Defendant Kimoto are limited to those set forth in counts (3)

2    sexual harassment/violation of civil rights; (4) coercion, coercing witnesses, witness tampering

3    and obstruction of justice/retaliation against Plaintiff for filing complaint; (5) Retaliation for

4    Exercising First Amendment Rights; (7) Invasion of Privacy, Intentional Interference with

5    Plaintiff's Interest in Solitude and/or Seclusion; (8) Invasion of Privacy, False Light; (9)

6    Intentional Deprivation of Civil Rights" (#128, p. 5; #174, p. 1). Therefore, defendant Kimoto's

7    motion to dismiss addresses only these claims (#128).

8        The court notes that the plaintiff is proceeding *pro se*. "In civil cases where the plaintiff

9    appears *pro se*, the court must construe the pleadings liberally and must afford plaintiff the benefit

10   of any doubt." *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 623 (9th Cir. 1988); *see*

11   *also Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).

12                   **II. DISCUSSION & ANALYSIS**

13   **A.    Discussion**

14       **1.    Motion to Dismiss Standard**

15       When considering a motion to dismiss for failure to state a claim upon which relief can

16   be granted, all material allegations in the complaint are accepted as true and are construed in the

17   light most favorable to the non-moving party. *Barnett v. Centoni*, 31 F. 3d 813, 816 (9th Cir.

18   1994); *Russell v. Landrieu*, 621 F.2d 1037, 1039 (9th Cir. 1980). For the movant to succeed, it

19   must appear beyond doubt that the plaintiff can prove no set of facts in support of his claim that

20   would entitle him to relief. *Barnett*, 31 F. 3d at 816; *see also Rothman v. Vedder Park Mgt.*, 912

21   F.2d 315, 316 (9th Cir. 1990).

22       Under section 1983, a plaintiff must allege that (1) defendants subjected him to the

23   deprivation of a right, privilege or immunity guaranteed by the U.S. Constitution or U.S. law, and

24   (2) that the defendant acted under the color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988);

25   *see also Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). "'Conclusionary allegations,

26   unsupported by facts, [will be] rejected as insufficient to state a claim under the Civil Rights

27   Act.'" *Jones v. Community Redevelopment Agency*, 733 F.2d 646, 649 (9th Cir. 1984) (quoting

28   *Sherman v. Yakahi*, 549 F.2d 1287, 1290 (9th Cir. 1977)). However, "the federal rules require

1  only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'"

2  *Gilligan v. Jamco Development Corp.*, 108 F.3d 246, 249 (9th Cir. 1997) (*citing* Fed.R.Civ.P.

3  8(a)). The issue on a motion to dismiss is not whether the plaintiff will ultimately prevail, but

4  whether the plaintiff is entitled to offer evidence to support the claims. *Id.*, *citing Scheuer v.*

5  *Rhodes*, 416 U.S. 232, 236 (1974).

6      **B.**    **Analysis**

7          **1.**    **Qualified Immunity of Reid Kimoto**

8        Defendants first argue the Reid Kimoto is entitled to qualified immunity (#128, p. 7-10).

9  Defendant Kimoto is sued in his individual capacity only (#27). Defendants claim that "Plaintiff

10  has failed to plead sufficient facts to establish that Defendant Kimoto engaged in any unlawful

11  conduct, much less that any action on the part of Defendant Kimoto resulted in the deprivation

12  of Plaintiff's constitutional rights" (#128, p. 9-10). Moreover, plaintiff cannot meet the second

13  step of the qualified immunity analysis. *Id.* p. 10.

14        Plaintiff responds that because defendant Kimoto is a county, rather than state, official, he

15  is not entitled to qualified immunity (#174). Further, defendant Kimoto knowingly violated

16  plaintiff's rights when he investigated plaintiff's complaints against defendant Chaplain Taylor.

17  *Id.* Plaintiff claims that defendant Kimoto "used his supervisorial (sic) capacity over [another

18  inmate] to leverage and coerce him into providing a false statement." Plaintiff states that "Kimoto

19  knew he did not have the regulatory authority to investigate an incident involving NDOC staff

20  and a prisoner, had know[n], he could not threaten people who were witnesses with termination

21  of their employment, and retaliate against Klein for his filing of a complaint and prison grievance,

22  therefore exceeding his authority and deliberately violating Klein's state and federal constitutional

23  rights." *Id.* p. 3.

24        Defendant replies plaintiff has failed to establish that defendant Kimoto is not entitled to

25  qualified immunity because "Plaintiff's allegations as set forth in the Amended Complaint (and

26  later reiterated in his Opposition) do not establish any conduct by Defendant Kimoto that resulted

27  in a deprivation of his constitutional rights." (#178, p. 3-4).

28        "The doctrine of qualified immunity protects government officials from liability for civil

6

1  damages insofar as their conduct does not violate clearly established statutory or constitutional

2  rights of which a reasonable person would have known." *Pearson v. Callahan*, 129 S. Ct. 808,

3  815 (2009) (internal quotation marks omitted). "For a constitutional right to be clearly

4  established, its contours must be sufficiently clear that a reasonable official would understand that

5  what he is doing violates that rights. This is not to say that an official action is protected by

6  qualified immunity unless the very action in question has previously been held unlawful; but it

7  is to say that in the light of pre-existing law the unlawfulness must be apparent." *Hope v. Pelzer*,

8  536 U.S. 730, 739 (2002) (citation omitted).

9      "Although earlier cases involving 'fundamentally similar' facts can provide especially

10  strong support for a conclusion that the law is clearly established, they are not necessary to such

11  a finding." *Id.* At 741. Accordingly, qualified immunity will be denied if a case involves "the

12  mere application of settled law to a new factual permutation." *Porter v. Bowen*, 496 F.3d 1009,

13  1026 (9th Cir. 2007). However, even if the violated right was clearly established, it may be

14  difficult for an officer to fully appreciate how the legal constraints apply to the specific situation

15  he or she faces. *Motley v. Parks*, 432 F.3d 1072, 1077 (9th Cir. 2005 (en banc)). "Under such

16  circumstance, if the officer's mistake as to what the law requires is reasonable,...the officer is

17  entitled to the immunity defense." *Id.* (brackets and internal quotation marks omitted). In essence,

18  "[o]fficers are entitled to qualified immunity unless they have been given fair notice that their

19  conduct was unreasonable in light of the specific context of the case." *Winterrowd v. Nelson*, 480

20  F.3d 1181, 1186 (9th Cir. 2007) (internal quotation marks omitted).

21      Prior to *Pearson v. Callahan*, 129 S. Ct. 808 (2009), the Supreme Court mandated a two-

22  step framework for deciding the issue of qualified immunity. First, courts were to decide whether

23  "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the

24  officer's conduct violated a constitutional right?" *Saucier v. Katz*, 533 U.S. 194, 201 (2001). If

25  the court answered this question affirmatively, the court would then ask whether the constitutional

26  right was clearly established. *Id.* In *Pearson*, the Supreme Court reconsidered the two-step

27  framework and held that courts are not required to address whether there was a constitutional

28  violation before deciding whether the constitutional right at issue was clearly established. 129 S.

7

1   Ct. at 818. However, the Supreme Court also stated that courts may continue to follow the two-
2   step framework as a matter of discretion. *Id.*

3                **2.    Count 3 - Sexual Harassment**

4        In count 3, plaintiff alleges that defendant Taylor sexually harassed him on June 5, 2007,
5   by rubbing plaintiff's back and running his finger's through plaintiff's hair (#12, p. 12-13). At
6   some time prior to this date, defendants Williams, C. Burson and Patterson told defendant Kimoto
7   that plaintiff was homosexual and that he "was never [to be] left alone with teachers in the
8   classrooms because plaintiff will set them up." *Id.* p. 13. Defendant Kimoto claims he is entitled
9   to qualified immunity on this count because plaintiff has not plead facts to establish that Kimoto
10  engaged in unlawful conduct (#128, p. 9). Further, plaintiff has failed to state a claim under
11  section 1983 because he has not alleged that defendant Kimoto's conduct resulted in a deprivation
12  of his constitutional rights. *Id.* p. 11.

13       It is unclear how defendant Kimoto was involved in the sexual harassment committed by
14  defendant Taylor. Plaintiff does not allege that Kimoto also participated in any harassment. It
15  appears that Kimoto was not present when the harassment occurred. The court does not
16  understand how defendant Kimoto's passive act of listening to information provided by other
17  people could have possibly violated plaintiff's constitutional rights. Kimoto is not responsible for
18  the behavior of defendant Taylor. Therefore, plaintiff has failed to state a claim in count 3 against
19  defendant Kimoto because plaintiff has not alleged that defendant Kimoto took any action that
20  violated his constitutional rights. Therefore, defendant Kimoto's motion to dismiss is granted as
21  to count 3.

22               **3.    Counts 4 and 5 - Retaliation**

23       In counts 4 and 5 plaintiff alleges that defendants Williams, C. Burson, Patterson disclosed
24  the contents of his grievance against defendant Taylor to defendant Kimoto, and defendant
25  Kimoto coerced Chris Schofield and Charles Smith, two witnesses of the alleged contact between
26  plaintiff and defendant Taylor, to give false statements about what happened (#12, p. 15-20.
27  Plaintiff claims that these defendants violated the "confidentiality provisions and process
28  provisions of AR 740" in retaliation for plaintiff's complaint against defendant Taylor. *Id.* p. 20.

1

2      Defendant Kimoto contends that both counts should be dismissed because he is entitled

3 to qualified immunity and because plaintiff has not alleged that defendant Kimoto's conduct

4 resulted in a deprivation of his constitutional rights (#128, p. 11). Plaintiff's position is that

5 defendant Kimoto is not entitled to qualified immunity because he is a local, rather than state

6 official (#174, p. 1). Moreover, Kimoto's act of "intimidat[ing] and threaten[ing] other school

7 district employees ... obviously ha[d] a chilling [e]ffect upon plaintiff's First Amendment Free

8 Speech rights." *Id.* p. 2. Plaintiff claims that Kimoto knew he could not lawfully investigate

9 prison safety and security issues and could not retaliate against plaintiff for filing a grievance. *Id.*

10      Prisoners have a right to meaningful access to the courts, and prison authorities may not

11 penalize or retaliate against an inmate for exercising this right. *Bradley v. Hall*, 64 F.3d 1276,

12 1279 (9th Cir. 1995). Prison officials may be sued under Section 1983 for retaliating against a

13 prisoner for exercising his or her constitutional rights. *Pratt v. Rowland*, 65 F.3d 802, 806 & n.4

14 (9th Cir. 1995). A retaliation claim involves five elements: "(1) An assertion that a state actor

15 took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct,

16 and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the

17 action did not advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68

18 (9th Cir. 2004). Retaliation claims must be evaluated in light of the deference accorded to prison

19 officials. *Id.* at 807. The inmate bears the burden of pleading and proving the absence of

20 legitimate correctional goals for the alleged retaliatory action. *Id.* at 806; *Bruce v. Ylst*, 351 F.3d

21 1283, 1288 (9th Cir. 2003). The Ninth Circuit has recognized that "timing can properly be

22 considered as circumstantial evidence of retaliatory intent." *Id., citing Pratt*, 65 F.3d at 808.

23      Defendant Kimoto is entitled to qualified immunity[2] as to plaintiff's retaliation claims.[3]

24

---

25      [2]The court notes that, in contrast to plaintiff's argument, local officials may assert qualified immunity. This defense is not limited to only state actors. *See Brosseau v. Haugen*, 543 U.S. 194,

26 197 (2004), *Saucier*, 533 U.S. at 200-01.

27      [3]In count 4, plaintiff also asserts claims of coercion, witness tampering, and obstruction of justice (#12, p. 14). These claims are criminal in nature and cannot be brought in a section 1983

28 action. Additionally, plaintiff appears to be dissatisfied with how defendant Kimoto and other

1    Plaintiff's allegations, even taken as true, do not show that defendant Kimoto retaliated against
2    Plaintiff. Specifically, plaintiff's allegations do not indicate that Kimoto's actions chilled his
3    First Amendment rights. Although plaintiff states that Kimoto's actions "obviously ha[d] a
4    chilling [e]ffect" on his First Amendment rights, plaintiff does not describe what exercise of his
5    First Amendment rights was prevented or chilled by Kimoto's alleged conduct. Plaintiff was able
6    to file a grievance against defendant Taylor. This grievance was forwarded to the Investigator
7    General's office for investigation (*See* #129, ex. C). Plaintiff was also able to commence the
8    instant lawsuit, as well as numerous other lawsuits after he grieved the alleged contact with
9    defendant Taylor (*see* 3:08-cv-00177-ECR-RAM, 2:08-cv-00890-LDG-PAL, 2:08-cv-01475-
10   LDG-LRL). Plaintiff does not allege that Kimoto prevented him from filing other grievances or
11   lawsuits or chilled his First Amendment rights in any other way. Further, a reasonable official
12   would not have understood that an act of questioning witnesses violated any clearly established
13   constitutional right. Plaintiff has no right to an effective grievance procedure, and no right to any
14   specific outcome in an investigation regarding defendant Taylor's conduct. Therefore, even
15   assuming defendant Kimoto threatened two witnesses, as plaintiff claims, this act would not have
16   violated plaintiff's clearly established constitutional rights.  Therefore, defendant Kimoto's
17   motion to dismiss is granted as to counts 4 and 5.

18              **3.    Counts 9 and 12 - "Deprivation of Civil Rights"**

19              Defendant contends that defendant Kimoto is entitled to qualified immunity as to count
20   9. The court will not address this argument because if finds that counts 9 and 12 are duplicative
21   of plaintiff's other counts, and therefore, improper under Rule 12(b)(6).  In count 9, plaintiff
22   merely re-alleges the claims asserted in counts 1 through 8. In count 12, plaintiff re-alleges the
23   claims asserted in counts 1 through 11. Plaintiff includes no separate allegations in either count
24   9 or count 12. Therefore, defendant Kimoto's motion to dismiss is granted as to counts 9 and 12

25

26

27   defendants responded to the grievance he filed against defendant Taylor. However, plaintiff does not
     have a right to an effective grievance procedure. *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988).

28

1     to avoid unnecessary duplication.

2     **4.    Counts 6, 7 and 8 - Negligence and Invasion of Privacy**

3     Defendant Kimoto claims that counts 7 and 8 should be dismissed because plaintiff has

4 not properly plead any federal causes of action. Therefore, the court does not have jurisdiction

5 over these remaining state law privacy claims. (#128, p. 11). The court agrees, and also dismisses

6 count 6 on the same basis. The court has granted defendant Kimoto's motion to dismiss as to all

7 claims that plaintiff's constitutional rights were violated. Therefore, the court no longer has

8 jurisdiction over any supplemental state claims. As such, defendant's motion to dismiss is granted

9 as to counts 6, 7 and 8.

10     **III. CONCLUSION**

11     Based on the foregoing and for good cause appearing, the court concludes that plaintiff

12 has failed to state a claim upon which relief can be granted because defendant Kimoto is entitled

13 to qualified immunity on all constitutional claims; therefore, the court declines to exercise

14 supplemental jurisdiction over plaintiff's state law claims. As such, the court respectfully

15 recommends that defendant Kimoto's motion to dismiss (#128) be **GRANTED** with prejudice

16 as to all counts, and that plaintiff's motion to strike (#138) be **DENIED**.

17     The parties are advised:

18     1.    Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice,

19 the parties may file specific written objections to this report and recommendation within ten days

20 of receipt. These objections should be entitled "Objections to Magistrate Judge's Report and

21 Recommendation" and should be accompanied by points and authorities for consideration by the

22 District Court.

23     2.    This report and recommendation is not an appealable order and any notice of appeal

24 pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's

25 judgment.

26 ///

27 ///

28 ///

1

**IV.  RECOMMENDATION**

2       **IT IS THEREFORE RECOMMENDED** that defendant Kimoto's motion to dismiss

3   (#128) be **GRANTED** with prejudice as to all counts, and that plaintiff's motion to strike (#138)

4   be **DENIED**.

5       **DATED:** August 5, 2009.

6

7                                                    _____

8                                                    UNITED STATES MAGISTRATE JUDGE

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28