FILED ✓    RECEIVED
ENTERED    SERVED ON
COUNSEL/PARTIES OF RECORD

AUG - 6 2009

CLERK US DISTRICT COURT
DISTRICT OF NEVADA
BY: _____ DEPUTY

1

2

3

4  PAUL S. KLEIN,

5          Plaintiff,

6  vs.

7

8  REID KIMOTO, *et al.*,

9          Defendants.

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

)
)
)    3:08-cv-00191-ECR-VPC
)
)
)    **REPORT AND RECOMMENDATION**
)    **OF U.S. MAGISTRATE JUDGE**
)
)
)    August 5, 2009
)
)

10      This Report and Recommendation is made to the Honorable Edward C. Reed, Jr., United

11  States District Judge.  The action was referred to the undersigned Magistrate Judge pursuant to

12  28 U.S.C. § 636(b)(1)(B) and LR IB 1-4.

13      Before the court is defendants' motion to dismiss, or in the alternative, motion for

14  summary judgment (#129).  Plaintiff opposed (#182), and defendants replied (#184).  For the

15  reasons stated below, the court recommends that defendants' motion to dismiss, or in the

16  alternative, motion for summary judgment (#129) be granted in part and denied in part.

17                      **I. HISTORY & PROCEDURAL BACKGROUND**

18      Plaintiff Paul Scott Klein ("plaintiff"), a *pro se* prisoner, is currently incarcerated by the

19  Nevada Department of Corrections ("NDOC") at Lovelock Correctional Center ("LCC") (#127).

20  Plaintiff brought his original action pursuant to 42 U.S.C. § 1983, alleging that prison officials

21  violated his First Amendment right to free speech, his Eighth Amendment right against cruel and

22  unusual punishment, and his Fourteenth Amendment rights to equal protection and due process

23  while he was incarcerated at Southern Desert Correctional Center ("SDCC") (#27). *Id.* p. 9-49.

24  Plaintiff also brings numerous state tort claims, including assault, battery, sexual harassment,

25  coercion of witnesses, witness tampering, obstruction of justice, negligent release of confidential

26  information about plaintiff, intentional interference with plaintiff's interest in seclusion, false

27  light, intentional infliction of emotional distress, and intentional deprivation of plaintiff's civil

28

1    rights. *Id.* Plaintiff names as defendants Reid Kimoto,[1] principal of the Southern Desert
2    Correctional Adult High School; Brian Williams, SDCC warden; Cheryl Burson, SDCC associate
3    warden; Jeffrey Patterson, SDCC associate warden; Lavert Taylor, Chaplain at SDCC; Vincent
4    Hain, Michael Maxfield, and Maryann Marsh, caseworkers at SDCC; Howard Skolnik, NDOC
5    director; Leo Vath, maintenance worker at SDCC; Anthony Digiralamo, maintenance supervisor
6    at SDCC; Paul Wheelock; David Grusman; Fred Tocco, former shop manager at SDCC; and Eric
7    Burson, Roy Plumlee, William Shubert, James Figueroa, James Brill, David Magnum, Gina Hain,
8    and Tracy Dory, correctional officers at SDCC.

9         Plaintiff asserts sixteen counts of alleged constitutional and state law violations. Counts
10   1 through 13 arise from plaintiff's allegations that defendant Taylor sexually harassed him, and
11   defendants' actions responding to plaintiff's subsequent grievance. Counts 14 and 15 arise from
12   plaintiff's alleged reporting of problems with the fire and smoke warning systems at SDCC, and
13   plaintiff's termination from his employment. Count 16 arises from plaintiff's placement in
14   administrative segregation, allegedly without adequate due process. Each count is summarized
15   in more detail, as follows:

16        **Count 1 - "Assault."** Plaintiff alleges that, on or about June 5, 2007, defendant Taylor
17   approached him at his place of employment at the Adult Education Department of the Clark
18   County School District in SDCC (#12, p. 9). Plaintiff claims that defendant Taylor approached
19   plaintiff's work station, and stood so close to plaintiff that defendant Taylor's "fat belly pushed
20   physically against the left side [of plaintiff's chair]..., caus[ing] the desk chair to push and roll to
21   the right." *Id.* Defendant Taylor also rubbed the area between plaintiff's shoulders with his hand,
22   and "ran his hand through plaintiff's hair [and stated], 'Oh, it's soft, when did you cut it?'" *Id.*
23   p. 10. Plaintiff claims that Chris Schofield, Charles Smith, and Aaron Castro were present and
24   witnessed defendant Taylor's actions. *Id.* Plaintiff also states that he has witnessed defendant
25   Taylor "sexually harassing female corrective staff on numerous occasions." *Id.*

26        **Count 2 - "Battery."** Plaintiff incorporates that facts set out in count I, and alleges that
27
28        [1]Defendant Kimoto is represented by separate counsel and has filed a separate motion to
     dismiss (#128). Therefore, plaintiff's claims against defendant Kimoto will not be discussed here.

                                              2

1   defendant Taylor "did commit battery upon plaintiff without authorization, authority, penological
2   interest and in total disregard of plaintiff's civil rights and human rights." *Id*. p. 11.

3       **Count 3 - "Sexual Harassment and Harassment."** Plaintiff realleges that defendant
4   Taylor approached him, and states that defendant Taylor sexually harassed and assaulted him
5   when he "without authority, permission, and without a penological interest did the following with
6   sexual intent, touch plaintiff, physically press his body against plaintiff, rubbed his back between
7   his shoulder blades and finished by running his hand through plaintiff's hair and telling plaintiff
8   his hair was soft and asking when did plaintiff cut it." *Id*. p. 12. Plaintiff also alleges that at some
9   time prior to this incident, defendants Williams, Cheryl Burson, and Patterson told defendants
10  Kimoto and Taylor that plaintiff was homosexual. Therefore, plaintiff was not to be left alone
11  with teachers. *Id*.

12      **Count 4 - "Coercion, Coercing Witnesses, Witness Tampering, and Obstruction of
13  Justice."** Plaintiff asserts that, after plaintiff filed a complaint against defendant Taylor based
14  upon the allegations in count I-III, defendant Taylor coerced witnesses to change their statements
15  regarding his actions. *Id*. Plaintiff claims that defendants Williams, Cheryl Burson, and Patterson
16  conspired to enlist defendant Kimoto to aid in dismissing plaintiff's complaint against defendant
17  Taylor and to punish plaintiff in retaliation for filing the complaint. *Id*. p. 15. Specifically,
18  defendant Kimoto threatened Chris Schofield and Charles Smith, both witnesses to defendant
19  Taylor's harassment of plaintiff, that they would lose their jobs at SDCC if they gave statements
20  against defendant Taylor. *Id*. Therefore, all witnesses denied having seen defendant Taylor's
21  conduct. Plaintiff also claims that defendants Cheryl Burson, Patterson, and Williams disclosed
22  the contents of his grievance against defendant Taylor, which was confidential, in violation of
23  Administrative Regulation 740. *Id*.

24      **Count 5 - "Retaliation for Exercising First Amendment U.S. Constitutional Free
25  Speech, Access to Courts, Due Process, and Equal Protection Rights."** Plaintiff claims that
26  defendants Cheryl Burson, Patterson, Williams, Taylor, and Kimoto entered into a conspiracy to
27  retaliate against plaintiff for filing a sexual harassment complaint against defendant Taylor. *Id*.

28

3

1   p. 18. Plaintiff states that after he filed his grievance against defendant Taylor, defendants C.

2   Burson, Williams, and Patterson met with defendant Kimoto "and enlisted his assistance in

3   getting plaintiff discredited by coercion of teacher C. Schofield." *Id.* p. 19. Plaintiff asserts that

4   defendants did not have the authority to disclose his grievance to defendant Kimoto; therefore,

5   they "retaliated against plaintiff's use of the [grievance system] by violating the confidentiality

6   provisions and process provisions of AR 740," and by coercing a school district employee to give

7   a false statement. *Id.*

8           **Count 6 - "Negligence."** Plaintiff alleges that defendants Williams, C. Burson, Patterson,

9   and Maxfield were negligent when they released confidential information from plaintiff's

10  grievance against defendant Taylor, and plaintiff's sexual orientation, "for purposes of interfering

11  with a sexual harassment complaint." *Id.* p. 21-22. Plaintiff also claims that defendant Kimoto

12  disclosed plaintiff's sexual orientation to other teachers, which constituted "intentional

13  interference with another's interest in solitude or seclusion." *Id.* p. 22.

14          **Count 7 - "Intentional Interference with Plaintiff's Interest in Solitude and/or**

15  **Seclusion."** As in count VI, plaintiff contends that defendants Williams, C. Burson, and Patterson

16  disclosed his sexual orientation to defendant Kimoto and that defendant Kimoto disclosed this

17  same information to other teachers, and that such conduct violated plaintiff's privacy rights. *Id.*

18  p. 23-25.

19          **Count 8 - "Law of False Light."** Again, plaintiff alleges that defendants Williams, C.

20  Burson, and Patterson "enlisted Reid Kimoto's assistance with gaining a false statement from C.

21  Schofield for purpose[s] of making plaintiff's complaint untrue and false." *Id.* p. 26. Further,

22  defendant Kimoto disclosed plaintiff's sexual orientation to other teachers, and told teachers that

23  "plaintiff would set them up for false allegations of sexual misconduct and ordered teachers to

24  never remain alone with plaintiff in the classrooms, making plaintiff appear to be a greater danger

25  homosexually than any other inmate employed in the education department." *Id.* p. 27. Such

26  statements portrayed plaintiff in a "false light." *Id.*

27          **Count 9 - "Willful, Intentional and Deliberate with Malice Aforethought or Without**

28  **Malice Deprivation of Civil Rights."** Plaintiff restates his allegations from counts 1-9 and

4

claims that defendants Williams, C. Burson, Maxfield, Patterson, and Taylor violated his rights to "due process, equal treatment/protection, not to be subjected to assault, battery, harassment, sexual harassment, coercion, threats, interference with pursuit of justice, cruel and unusual punishment, malice, negligence, slander, false light, and interference with right and interest in solitude and/or seclusion coupled with First Amendment freedom of speech without fear of retaliation." *Id.* p. 29.

**Count 10 - "First Amendment Rights to Free Speech and Right to Privacy without Fear of Retaliation."** Plaintiff again alleges that defendants retaliated against plaintiff for his use of the grievance system against defendant Taylor. *Id.* p. 30.

**Count 11 - "Eighth Amendment U.S. Constitutional Rights to be Free from Cruel and Unusual Punishment, Due Process and Equal Protection."** Plaintiff claims that defendants Williams, C. Burson, Patterson, Maxfield, and Kimoto violated his Eighth and Fourteenth Amendment rights. *Id.* p. 22. Plaintiff states that because of his personal background, he suffers a fear of physical contact. Therefore, defendant Taylor's physical contact of plaintiff caused him to "become enraged to the point where it affected his health," and that plaintiff has sought care of a physician in the mental health department. *Id.* p. 33-34.

**Count 12 - "Due Process, Procedural Due Process and Equal Treatment Clauses of the 1st, 5th, 6th, 8th, and 14th Amendments of the U.S. Constitution as they Involve Counts I though II of this Complaint."** Plaintiff states that he "has addressed all of the due process and equal protection violations fully in Counts 1 through 11 as they pertain to defendants B. Williams, C. Burson, M. Maxfield, Mr. Patterson, and Mr. R. Kimoto and are connected to the events of June 5th, 2007." *Id.* p. 35.

**Count 13 - "Deliberate Intentional and Wilful (sic) Infliction of Physical and Emotional Distress."** Plaintiff claims that defendants Williams, C. Burson, Maxfield, and Patterson knew that other inmates had complained that defendant Taylor had previously sexually harassed women visitors, and that "nothing was done to correct or discipline" defendant Taylor. Plaintiff also alleges that defendant Taylor's physical contact with him caused him to suffer physical discomfort, stress, and emotional pain, and that defendant Taylor knew that his actions

caused plaintiff to suffer this reaction. *Id*. p. 36-37. Plaintiff also repeats his previous allegations that defendants Williams, C. Burson, and Patterson improperly disclosed his grievance to defendant Kimoto less than 24 hours after he filed it, which demonstrates that these defendants "condoned and supported Mr. Taylor's horrible, offensive, and disturbing conduct by initiating a clear plan to cover up the unlawful conduct by discrediting plaintiff, and this betrayal comes with its own set of pain and emotional suffering." *Id*. p. 37.

**Count 14 - "Eighth Amendment Cruel and Unusual Punishment, Due Process, Equal Treatment/Protection and Fourteenth Amendment of U.S. Constitution."** Plaintiff alleges that while he was working in the prison maintenance department at SDCC in June 2006, he discovered that the fire and smoke warning system in Unit 3 was defective. Specifically, water leaked into the system and shorted it out, which caused the alarm to sound. *Id*. p. 38. Plaintiff claims that he reported this defect to his supervisors, defendants Vath, Wheelock, and Digiralamo. These defendants instructed plaintiff to by-pass the faulty circuit in the fire and smoke system and to reattach the defective and nonoperational circuit board, rather than replace it. *Id*. Plaintiff contends that Unit 8 has not had a fire and smoke warning system since June 2006 because it was removed by defendants Diagiralamo, Wheelock, and Vath and taken to the electronics system.

**Count 15 - "Free Speech, Access to Courts, False Charges, Equal Treatment, Equal Protection, Due Process of the First and Fourteenth Amendments of the U.S. Constitution."** Plaintiff alleges that on August 2, 2006, defendant E. Burson threatened plaintiff when plaintiff inquired about his loss of his K-Gate pass and his job. *Id*. p. 43. Plaintiff also claims that on August 18, 2006, defendant Grusman wrote false disciplinary charges against plaintiff, at the direction of defendants Williams, C. Burson, Patterson, Tocco and Skolnik, in retaliation for plaintiff commencing a civil rights law suit against them. *Id*. Further, defendant Skolnik ordered defendant Williams to file the false charges against plaintiff and defendant Williams ordered defendant Plumlee to find plaintiff guilty of the disciplinary charges in retaliation for plaintiff use of the grievance system. *Id*. p. 44. Plaintiff also contends that defendants Williams, C. Burson, E. Burson, Patterson, Skolnik, Wheelock, Tony, and Vath retaliated against plaintiff "to shut him

up and keep him from further inquiries and investigation into the fire system that has almost killed inmates by smoke inhalation death." *Id.*

**Count 16 - "Free Speech, Cruel and Unusual Punishment, Retaliation, Harassment, Due Process, Equal Protection, Equal Treatment Right Under First, Eighth, and Fourteenth Amendments of U.S. Constitution, and 4th Amendment."** Plaintiff claims that because he gave copies of a legal complaint to Tracy Dory, defendant C. Burson filed a false notice of charges against him, alleging that he compromised staff (#12, p. 45). However, because of printer problems, defendant Brill never gave plaintiff the physical copy of the notice of charges. *Id.* p. 46. After a disciplinary hearing, plaintiff was convicted of the charged offense. *Id.* Plaintiff appealed, and the disciplinary decision was dismissed. *Id.* p. 47. However, despite this dismissal, plaintiff was not returned to his level 1 housing or his job in the education department.

The court notes that the plaintiff is proceeding *pro se*. "In civil cases where the plaintiff appears *pro se*, the court must construe the pleadings liberally and must afford plaintiff the benefit of any doubt." *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 623 (9th Cir. 1988); *see also Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).

## II. DISCUSSION & ANALYSIS

### A.    Discussion

#### 1.    Motion to Dismiss Standard

When considering a motion to dismiss for failure to state a claim upon which relief can be granted, all material allegations in the complaint are accepted as true and are construed in the light most favorable to the non-moving party. *Barnett v. Centoni*, 31 F. 3d 813, 816 (9th Cir. 1994); *Russell v. Landrieu*, 621 F.2d 1037, 1039 (9th Cir. 1980). "As a general rule, 'a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion.'" *Lee v. City of Los Angeles*, 250 F.3d 668, 688-689 (9th Cir. 2001) (*quoting Branch v. Tunnell*, 14 F.3d 449, 453 (9th Cir. 1994), *overruled on other grounds by Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002)). However, Rule 12 provides:

> If, on a motion asserting the defense numbered (6) to dismiss for
> failure of the pleading to state a claim upon which relief can be

1
2
3

> granted, matters outside the pleading are presented to and not
> excluded by the court, the motion shall be treated as one for
> summary judgment and disposed of as provided in Rule 56, and all
> parties shall be given reasonable opportunity to present all material
> made pertinent to such a motion by Rule 56.

Fed.R.Civ.P. 12(b)(6).  Notwithstanding this rule, "a motion to dismiss is not automatically

4

converted into a motion for summary judgment whenever matters outside the pleadings happen

5

to be filed with the court." *North Star Intern. v. Arizona Corp. Com'n*, 720 F.2d 578, 582 (9th

6

Cir. 1983).  A motion filed with extraneous materials is to be treated as a motion for summary

7

judgment only if the court relies on the material. *Swedberg v. Marotzke*, 339 F.3d 1139, 1143-44

8

(9th Cir. 2003).  Conversion to summary judgment is at the discretion of the court and the court

9

must take some affirmative action before conversion is effected. *Id.* at 1144.

10

### 2.    Summary Judgment Standard

11

Summary judgment allows courts to avoid unnecessary trials where no material factual

12

disputes exist. *Northwest Motorcycle Ass'n v. U.S. Dept. of Agriculture*, 18 F.3d 1468, 1471 (9th

13

Cir. 1994).  The court grants summary judgment if no genuine issues of material fact remain in

14

dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(C).

15

In deciding whether to grant summary judgment, the court must view all evidence and any

16

inferences arising from the evidence in the light most favorable to the nonmoving party. *Bagdadi*

17

*v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996).  In inmate cases, the courts must

18
19
20
21

> [d]istinguish between evidence of disputed facts and disputed
> matters of professional judgment.  In respect to the latter, our
> inferences must accord deference to the views of prison
> authorities.  Unless a prisoner can point to sufficient evidence
> regarding such issues of judgment to allow him to prevail on the
> merits, he cannot prevail at the summary judgment stage.

22

*Beard v. Banks*, 548 U.S. 521, 526, 126 S.Ct. 2572, 2576 (2006).  Where reasonable minds could

23

differ on the material facts at issue, however, summary judgment should not be granted.

24

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986).

25

The moving party bears the burden of informing the court of the basis for its motion, and

26

submitting evidence which demonstrates the absence of any genuine issue of material fact.

27

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the moving party has met its burden,

28

the party opposing the motion may not rest upon mere allegations or denials in the pleadings but

8

1  must set forth specific facts showing that there exists a genuine issue for trial. *Anderson*, 477

2  U.S. at 248.   Rule 56(c) mandates the entry of summary judgment, after adequate time for

3  discovery, against a party who fails to make a showing sufficient to establish the existence of an

4  element essential to that party's case, and on which that party will bear the burden of proof at

5  trial. *Celotex*, 477 U.S. at 322-23.

6  **B.   Analysis**

7  Defendants submit numerous grievances and responses, an affidavit, and a previous

8  complaint filed by plaintiff (#129). In opposition, plaintiff submits fifteen exhibits (#182). The

9  court converts defendants' motion to dismiss, or in the alternative, motion for summary judgment,

10  into a motion for summary judgment pursuant to Rule 12(b)(6).[2]

11  **1.   Eleventh Amendment Immunity**

12  Defendants first assert that plaintiff's claims are barred by the Eleventh Amendment (#129,

13  p. 7). The Eleventh Amendment states: "The Judicial power of the United States shall not be

14  construed to extend to any suit... against one of the United States by Citizens of another State...

15  ." U.S. Const. amend XI. The Supreme Court has held that a suit against a state official in his

16  or her official capacity is not a suit against that official, but rather a suit against the official's

17  office; therefore, an official acting in his or her official capacity is not a "person" under section

18  1983. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989).   Since the state and its

19  officials are not considered "persons" within the meaning of section 1983, "they cannot be held

20  liable under the statute for money damages." *Bank of Lake Tahoe v. Bank of America*, 318 F.3d

21  914, 918 (9th Cir. 2003).   However, when a state official is sued in his official capacity for

22  prospective injunctive relief, he is considered a "person" for the purposes of Section 1983. *Doe*

23  *v. Lawrence Livermore Nat. Laboratory*, 131 F.3d 836, 839 (9th Cir. 1997).

24  In his amended complaint, plaintiff names defendants Brill, Cheryl Burson, Eric Burson,

25  Figueroa, Hain, Magnum, Marsh, Maxfield, Patterson, Plumlee, Taylor, Skolnik, Wheelock,

26  Williams, and Hain in their individual and official capacities (#12).   Plaintiff requests money

27  

---

28  [2] Plaintiff had notice that defendants' motion to dismiss could be treated as a motion for summary judgment, as the court issued a *Klingele* order on January 9, 2009 (#55).

1   damages in addition to injunctive relief. *Id.* It is clear that defendants cannot be sued in their

2   official capacities for money damages. *Bank of Lake Tahoe*, 318 F.3d at 918. Therefore,

3   plaintiff's claims for money damages against these defendants in their official capacities are

4   dismissed.

5           **2.     Qualified Immunity**

6           Defendants next argue that the motion for summary judgment should be granted because

7   they are entitled to qualified immunity (#129, p. 8).

8           "The doctrine of qualified immunity protects government officials from liability for civil

9   damages insofar as their conduct does not violate clearly established statutory or constitutional

10  rights of which a reasonable person would have known." *Pearson v. Callahan*, 129 S. Ct. 808,

11  815 (2009) (internal quotation marks omitted). "For a constitutional right to be clearly

12  established, its contours must be sufficiently clear that a reasonable official would understand that

13  what he is doing violates that rights. This is not to say that an official action is protected by

14  qualified immunity unless the very action in question has previously been held unlawful; but it

15  is to say that in the light of pre-existing law the unlawfulness must be apparent." *Hope v. Pelzer*,

16  536 U.S. 730, 739 (2002) (citation omitted).

17          "Although earlier cases involving 'fundamentally similar' facts can provide especially

18  strong support for a conclusion that the law is clearly established, they are not necessary to such

19  a finding." *Id.* At 741. Accordingly, qualified immunity will be denied if a case involves "the

20  mere application of settled law to a new factual permutation." *Porter v. Bowen*, 496 F.3d 1009,

21  1026 (9th Cir. 2007). However, even if the violated right was clearly established, it may be

22  difficult for an officer to fully appreciate how the legal constraints apply to the specific situation

23  he or she faces. *Motley v. Parks*, 432 F.3d 1072, 1077 (9th Cir. 2005 (en banc)). "Under such

24  circumstance, if the officer's mistake as to what the law requires is reasonable,...the officer is

25  entitled to the immunity defense." *Id.* (brackets and internal quotation marks omitted). In essence,

26  "[o]fficers are entitled to qualified immunity unless they have been given fair notice that their

27  conduct was unreasonable in light of the specific context of the case." *Winterrowd v. Nelson*, 480

28  F.3d 1181, 1186 (9th Cir. 2007) (internal quotation marks omitted).

1       Prior to *Pearson v. Callahan*, 129 S. Ct. 808 (2009), the Supreme Court mandated a two-

2 step framework for deciding the issue of qualified immunity. First, courts were to decide whether

3 "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the

4 officer's conduct violated a constitutional right?" *Saucier v. Katz*, 533 U.S. 194, 201 (2001). If

5 the court answered this question affirmatively, the court would then ask whether the constitutional

6 right was clearly established. *Id.* In *Pearson*, the Supreme Court reconsidered the two-step

7 framework and held that courts are not required to address whether there was a constitutional

8 violation before deciding whether the constitutional right at issue was clearly established. 129 S.

9 Ct. at 818. However, the Supreme Court also stated that courts may continue to follow the two-

10 step framework as a matter of discretion. *Id.*

11       Defendants are entitled to qualified immunity on certain counts, as more fully discussed

12 below.

13         **3.**     **Eighth Amendment Claims - Counts 3, 11, 14, 15, and 16**

14             **(a)**     **Count 3 - Sexual Harassment**

15       Defendants assert that count 3 should be dismissed because plaintiff has failed to

16 demonstrate that he was sexually harassed (#129, p. 14). Specifically, plaintiff has not

17 demonstrated that defendant Taylor "acted with a culpable state of mind when he allegedly

18 touched Plaintiff's back and hair." *Id.* Defendant Taylor is a chaplain and provides pastoral care

19 to inmates at SDCC. Therefore, even if physical contact did occur, defendant Taylor did not

20 intend to harass plaintiff and did not approach plaintiff in a sexual manner. *Id.*, ex. A. Finally,

21 plaintiff's contention that defendant Taylor told plaintiff his hair was soft is not a constitutional

22 violation because verbal harassment does not violate the Constitution. *Id.*

23       Sexual abuse in prison is viewed through the Eighth Amendment's ban on cruel and

24 unusual punishment. "Whether a particular event or condition in fact constitutes 'cruel and

25 unusual punishment' is gauged against 'the evolving standards of decency that mark the progress

26 of a maturing society.'" *Schwenk v. Hartford*, 204 F.3d 1187, 1196 (9th Cir. 2000), quoting

27 *Hudson v. McMillian*, 503 U.S. 1, 8 (1992). In terms of excessive force, the Supreme Court has

28 held that when "prison officials maliciously and sadistically use force to cause harm,

1    contemporary standards of decency always are violated," regardless of whether a prisoner suffered

2    significant physical injury. *Hudson*, 503 U.S. at 9. The only requirement is that the prison

3    official's actions be "offensive to human dignity." *Schwenk*, 204 F.3d at 1196. "A sexual assault

4    on an inmate by a guard [or other prison official] ... is deeply 'offensive to human dignity.'" *Id.*

5    at 1197. Further, where a prison official, rather than another inmate, is "responsible for the rape

6    and sexual abuse of inmates, qualified immunity offers *no* shield." *Id.* (holding that a guard's

7    conduct violated the Eighth Amendment, and that a reasonable officer would have thought it was

8    a violation of the Constitution to "enter the cell on a prisoner (transsexual or otherwise, unzip his

9    pants, expose himself, demand oral sex, and then, after being refused, grab the prisoner, push her

10   up against the bars of the cell, and grind his naked penis into her").

11          By contrast, "the Eighth Amendment's protections do not necessarily extend to mere verbal

12   sexual harassment." *Austin v. Terhune*, 367 F.3d 1167, 1172 (9th Cir. 2004) (finding that a prison

13   guard's act of exposing himself to an inmate from an elevated glass-enclosed control booth was

14   not sufficiently serious to violate the Eighth Amendment because the guard never physically

15   touched the inmate and because the incident was isolated and lasted only 30-40 seconds).

16   Moreover, not "every malevolent touch by a prison guard gives rise to a federal cause of action."

17   *Hudson*, 503 U.S. at 9. Rather, "[t]he Eighth Amendment's prohibition of 'cruel and unusual

18   punishments necessarily excludes from constitutional recognition *de minimis* uses of physical

19   force." *Id.* at 9-10; *see also Berryhill v. Schriro*, 137 F.3d 1073 (8th Cir. 1998) (holding that not

20   all "unwelcome touches amount[] to unnecessary and wanton infliction of pain," and that prison

21   maintenance employees' conduct of briefly touching an inmate's buttocks, unaccompanied by any

22   sexual comments or banter, was not sexual assault required to support the inmate's Eighth

23   Amendment claim, as the touching lasted only seconds, and the inmate believed the employees

24   were trying to embarrass him, not rape him); *Fisher v. Dizon*, 2008 WL 619149 (E.D. Cal March

25   4, 2008) (a guard's act of poking an inmate twice in the buttocks was *de minimis* and was not an

26   act of cruel and unusual punishment); *Mcgill v. Corrections Corp. of America*, 2009 WL 790363

27   (W.D. La., March 25, 2009) (a prison doctor's act of fondling an inmate's penis and testicles did

28   not state an Eighth Amendment claim because the prisoner alleged nothing more than a *de*

1  *minimis* psychological injury; the single incident was not "severe enough to be objectively
2  sufficiently serious or egregious to state a constitutional violation.").

3       Plaintiff has not demonstrated that defendant Taylor's conduct violated his Eighth
4  Amendment rights. According to plaintiff's allegations, defendant Taylor touched plaintiff's back
5  and head for a very brief period of time. This was an isolated incident. His conduct was not
6  accompanied by any sexual comments  or banter, and plaintiff suffered no physical injury.
7  Defendant Taylor's actions were not offensive to human dignity. This single incident is not
8  enough to constitute sexual assault or abuse to violate plaintiff's constitutional rights.  The
9  contact cannot be described as anything more than a *de minimis* use of physical force. Further,
10  even assuming that plaintiff's rights were violated through this brief physical contact, defendant
11  Taylor is entitled to qualified immunity. Based on the case law set forth above, a reasonable
12  officer would not believe that rubbing an inmate's back and hair for a few seconds, or asking an
13  inmate about his hair, would violate that inmate's constitutional rights. Therefore, defendants'
14  motion for summary judgment (#129) is granted as to count 3.

15                  **(b)**    **Count 11 - Failure to Protect**

16       Defendants argue that count 11 should be dismissed because it names only supervisory
17  defendants who were in no way personally involved in any deprivation of plaintiff's rights (#129,
18  p. 22). Plaintiff's position is that defendants Williams, C. Burson, and Patterson were aware of
19  defendant Taylor's "past sexual and physical misconduct, and have failed to take corrective
20  action" (#182, p. 14). Based on this argument, it appears that plaintiff is asserting a failure to
21  protect claim rather than a claim of supervisory liability.

22       A claim for failure to protect is brought under the Eighth Amendment. As such, a prisoner
23  must meet both the objective and subjective prongs of a deliberate indifference analysis. *Farmer*
24  *v. Brennan*, 511 U.S. 825, 834 (1994).  First, as for the objective prong, the deprivation alleged
25  must be "sufficiently serious." *Id.*  "For a claim... based on failure to prevent harm, the inmate
26  must show that he is incarcerated under conditions posing a substantial risk of serious harm."
27  Second, as for the subjective prong, a prison official must have a "sufficiently culpable state of
28  mind;" "[i]n prison-conditions case that state of mind is one of 'deliberate indifference' to inmate

13

1   health or safety." *Id.*, quoting *Wilson v. Seither*, 501 U.S. 25, 302-303(1991).

2   Plaintiff appears to argue that, by allowing defendant Taylor to briefly rub his back and

3   head, defendants incarcerated plaintiff under conditions posing a substantial risk of serious harm.

4   There is no support for this argument. Even assuming defendant Taylor approached female

5   visitors of other inmates, it is unclear how this would place plaintiff in a substantial risk of serious

6   harm. Plaintiff does not allege the defendant Taylor approached him or had any physical contact

7   with him before the incident. Plaintiff also does not allege that defendant Taylor ever assaulted

8   any inmates or visitors. There is no evidence that plaintiff was ever in any danger such that his

9   conditions of incarceration posed a substantial risk of serious harm. Moreover, plaintiff has

10  presented no evidence to indicate that defendants acted with deliberate indifference to inmate

11  health or safety. As such, defendants' motion for summary judgment is granted as to count 11.[3]

12              **(c)    Counts 14, 15, and 16 - Sufficiency of Fire Alarm System**

13  In counts 14, 15, and 16, plaintiff's primary claims assert that defendants retaliated against

14  him for complaining about the sufficiency of the fire and smoke warning systems at SDCC and

15  for commencing a lawsuit against Fred Tocco. However, plaintiff also appears to be asserting an

16  Eighth Amendment violation; specifically, that his Eighth Amendment rights were violated

17  because the fire and smoke warning systems are defective (#12, p. 38; #182, p. 15). However,

18  inherent in an Eighth Amendment claim is that a plaintiff have suffered a sufficiently serious

19  injury. The Eighth Amendment protects against cruel and unusual punishment. *See Farmer v.*

20  *Brennan*, 511 U.S. 825, 834 (1994), *Wilson v. Seither*, 501 U.S. 25, 302-303 (1991). Plaintiff has

21  not alleged that he, personally, has been injured in any way, or that defendants failed to protect

22  him from any harm. Plaintiff claims that a man was almost killed because the fire alarm failed to

23  sound (#12, p. 39-40). However, plaintiff alleges no personal injury. To the extent other inmates

24

25          [3]Additionally, in the event plaintiff is attempting to assert a claim of supervisory liability,
26  such a claim would also fail. "A supervisor cannot be held personally liable under § 1983 for the
    constitutional deprivations caused by his subordinates, absent his participation or direction in the
27  deprivation." *Ybarra v. Reno Thunderbird Mobile Home Village*, 723 F.2d 675, 680 (9th Cir. 1984).
    There is no indication defendants Williams, Burson, or Patterson were in any way involved in the
28  alleged contact between plaintiff and defendant Taylor.

1   were injured because of defective smoke and fire alarms, plaintiff does not have standing to bring

2   this action on their behalf. Plaintiff has not demonstrated that he suffered any injury because of

3   any deficiency in the smoke and fire alarm systems. Therefore, defendants' motion for summary

4   judgment is granted as to plaintiff's Eighth Amendment claims in counts 14, 15, and 16.

5           **4.      Retaliation Claims - Counts 4, 5, 10, 14, 15, and 16**

6           Prisoners have a right to meaningful access to the courts, and prison authorities may not

7   penalize or retaliate against an inmate for exercising this right. *Bradley v. Hall*, 64 F.3d 1276,

8   1279 (9th Cir. 1995). Prison officials may be sued under Section 1983 for retaliating against a

9   prisoner for exercising his or her constitutional rights. *Pratt v. Rowland*, 65 F.3d 802, 806 & n.4

10  (9th Cir. 1995). A retaliation claim involves five elements: "(1) An assertion that a state actor

11  took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct,

12  and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the

13  action did not advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68

14  (9th Cir. 2004). Retaliation claims must be evaluated in light of the deference accorded to prison

15  officials. *Id.* at 807.  The inmate bears the burden of pleading and proving the absence of

16  legitimate correctional goals for the alleged retaliatory action. *Id.* at 806; *Bruce v. Ylst*, 351 F.3d

17  1283, 1288 (9th Cir. 2003).  The Ninth Circuit has recognized that "timing can properly be

18  considered as circumstantial evidence of retaliatory intent." *Id.*, *citing Pratt*, 65 F.3d at 808.

19          **(a)      Counts 4, 5, and 10 - disclosure of grievance**

20          In counts 4, 5, and 10, plaintiff alleges that defendants Williams, C. Burson, Patterson,

21  and Williams conspired to retaliate against him for filing a grievance against defendant Taylor

22  (#12, p. 14). Specifically, they disclosed the contents of the grievance to defendant Kimoto, and

23  defendant Kimoto coerced Chris Schofield and Charles Smith, two witnesses of the alleged

24  contact between plaintiff and defendant Taylor, to give false statements about what happened. *Id.*

25  p. 15-20. Plaintiff claims that these defendants violated the "confidentiality provisions and

26  process provisions of AR 740" in retaliation for plaintiff's complaint against defendant Taylor.

27  *Id.* p. 20.

28          Defendants assert that count 4 should be dismissed because plaintiff's claim of coercion

15

1   for the purpose of retaliation is not a proper cause of action in a civil matter (#129, p. 14).

2   Further, as to plaintiff's conspiracy claim, plaintiff has not alleged what constitutional right he

3   was denied as a result of any conspiracy. *Id.* Additionally, plaintiff has not alleged that any

4   retaliation had a chilling effect on his First Amendment rights. *Id.* p. 17. Moreover, although

5   plaintiff claims the retaliation resulted in his termination from employment, he does not have a

6   constitutional right to such employment. *Id.* Defendants contend that count 5 should be dismissed

7   because it is duplicative of count 4. *Id.* Further, plaintiff does not have a constitutional right to

8   an effective grievance procedure. *Id.* p. 18. Finally, defendants argue that claim 10 should be

9   dismissed because it is duplicative of all other counts in plaintiff's amended complaint. *Id.* p. 22.

10  In opposition, plaintiff repeats his conspiracy and retaliation claims from his complaint (#182,

11  p. 11-12). As to count 10, plaintiff states that he "incorporates count 10 into count 5." *Id.* p. 14.

12          Plaintiff has not alleged facts sufficient to demonstrate retaliation. Even assuming plaintiff

13  could prove the first three elements of retaliation, his allegations do not indicate that defendants'

14  disclosure of his complaint chilled his First Amendment rights or that such action did not advance

15  a legitimate correctional goal. First, there is nothing to suggest that plaintiff's First Amendment

16  rights were chilled. Plaintiff was able to file a grievance against defendant Taylor. This grievance

17  was forwarded to the Investigator General's office for investigation (#129, ex. C). Plaintiff was

18  also able to commence the instant lawsuit, as well as numerous other lawsuits after he grieved the

19  alleged contact with defendant Taylor (*see* 3:08-cv-00177-ECR-RAM, 2:08-cv-00890-LDG-PAL,

20  2:08-cv-01475-LDG-LRL). Plaintiff does not allege that defendants have prevented him from

21  filing other grievances, confiscated legal materials, or anything else that would chill his First

22  Amendment rights. Second, plaintiff does not demonstrate the absence of legitimate penological

23  goals for disclosing the contents of his grievance. Plaintiff alleged that a prison Chaplain had

24  sexually harassed him in a classroom and that others had witnessed this action. Defendant Kimoto

25  is the principal of the school. It seems logical that defendants would speak with the school

26  principal if they were investigating a claim of sexual harassment brought by a school employee.

27  Plaintiff has not demonstrated the absence of a legitimate penological goal. Therefore,

28  defendants' motion for summary judgment is granted as to counts 4, 5, and 10.

1

                    **(b)    Counts 14 and 15 - termination of employment**

2           Plaintiff alleges that while he was working in the prison maintenance department at SDCC

3    in June 2006, he discovered that the fire and smoke warning system in Unit 3 was defective (#12,

4    p. 38). Plaintiff claims that he reported this defect to his supervisors, defendants Vath, Wheelock,

5    and Digiralamo. These defendants instructed plaintiff to by-pass the faulty circuit in the fire and

6    smoke system and to reattach the defective and nonoperational circuit board, rather than replace

7    it. *Id.* p. 39.  Defendant E. Burson terminated plaintiff from his position pending an investigation

8    of whether plaintiff made inappropriate comments about prison employees. *Id.* p. 40.  Plaintiff

9    alleges that defendant Grusman, on orders of defendant Williams and Skolnik, then filed a false

10   Notice of Charges against plaintiff in retaliation for commencing a civil rights lawsuit against

11   Fred Tocco. *Id.* p. 40, 43-44. All disciplinary charges against plaintiff were dismissed; however,

12   plaintiff was not reinstated in his job in the maintenance department. *Id.* p. 41.

13          Defendants argue that counts 14 and 15 should be dismissed because plaintiff does not

14   have a constitutional right to employment (#129, p. 24). Further, plaintiff was terminated due to

15   the reports that he was making inappropriate comments about prison staff, and not out of

16   retaliation. *Id.* p. 25, citing ex. E. Plaintiff concedes that he does not have a constitutionally

17   protected right to employment (#182, p. 15). However, he argues that his employment was

18   terminated in retaliation for filing a grievance or because of false disciplinary charges. *Id.*

19   Defendants contend that, because plaintiff has admitted that he has no right to employment, his

20   claims of retaliatory termination must be dismissed (#184, p. 7).

21          Again, plaintiff has not proven the elements of retaliation. Although plaintiff has asserted

22   that defendants took an adverse action against him, in that he was fired from his job, plaintiff has

23   not demonstrated that this action was taken because of his protected conduct, or that the action

24   chilled his exercise of his First Amendment rights. Defendants have submitted evidence that

25   plaintiff was  removed from his maintenance position because he was "making inappropriate

26   comments about staff the work behind K-Gate" (#129, ex. E). Plaintiff was removed from his

27   position pending an investigation. If the allegations were not sustained, plaintiff would be

28   reinstated in his position. If they were sustained, he would be terminated and reassigned. *Id.* The

1   investigation confirmed that plaintiff had made inappropriate comments, and he was informed

2   that a Notice of Charges would be forthcoming. *Id.* Plaintiff has not presented evidence that these

3   grievance statements are false or that defendants acted with a retaliatory motive. Plaintiff's

4   allegations alone are not sufficient to sustain a retaliation claim. Further, as discussed in section

5   (B)(4)(a) above, plaintiff has not presented evidence to indicate that defendants' actions chilled

6   his exercise of his First Amendment rights. Therefore, defendants' motion for summary judgment

7   is granted as to plaintiff's retaliation claims in count 14 and 15.

8                                           **(c)     Count 16**

9          In count 16, plaintiff states that on July 19, 2007, he delivered copies of Equal

10  Employment Opportunity Commission complaints and civil rights litigation documentation to a

11  Tracy Dory, an employee in Victim Services (#12, p. 45). Plaintiff claims that because he gave

12  these documents to Tracy Dory, defendant C. Burson filed a false notice of charges against him,

13  alleging that he compromised staff. *Id.* However, because of printer problems, defendant Brill

14  never gave plaintiff the physical copy of the notice of charges. *Id.* p. 46. After a disciplinary

15  hearing, plaintiff was convicted of the charged offense. *Id.* Plaintiff appealed, and the disciplinary

16  decision was dismissed. *Id.* p. 47. However, despite this dismissal, defendants originally refused

17  to allow plaintiff to return to his level 1 housing or his job in the education department. *Id.*

18  Plaintiff was eventually returned to level 1 housing. *Id.* Plaintiff claims that defendants took all

19  of these actions against him in retaliation for plaintiff filing grievances and a lawsuit against

20  them. *Id.*

21         Defendants argue that count 16 is also duplicative of counts 14 and 15, and therefore

22  should be dismissed. Further, plaintiff has no constitutional right to be housed at any specific

23  level (#129, p. 25). Again, plaintiff has no constitutional right to employment while incarcerated.

24  *Id.* p. 26. Plaintiff's position is that defendant Cheryl Burson "has not denied having filed false

25  disciplinary charges against plaintiff..., nor has she denied having filed the false disciplinary

26  charges simply because plaintiff has exercised his First Amendment/free speech rights when he

27  provided Tracy Dory copies of official public records" (#182, p. 16). Plaintiff also claims that

28  defendant C. Burson "forced plaintiff" to suffer an unjust administrative segregation without

                                                  18

1   required due process protections." *Id.* Defendants reply that plaintiff has no constitutional right

2   to be housed at any specific level (#184, p. 7). Further, plaintiff's allegations that the charges

3   against him were false are irrelevant because plaintiff was afforded a disciplinary hearing in

4   accordance with procedural due process. Finally, plaintiff "sets forth no more than sweeping

5   conclusory allegations that he was not given due process protections." *Id.* p. 8.

6       As with counts 14 and 15, plaintiff has not demonstrated that defendants retaliated against

7   him. There is no indication that defendants issued a notice of charges against plaintiff because he

8   initiated numerous lawsuits and grievances against them. Further, plaintiff's exercise of his First

9   Amendment rights has not been chilled. As to plaintiff's housing claims, the court agrees with

10  defendants that plaintiff does not a constitutional right to be housed at any specific level, and

11  defendants were under no constitutional obligation to house plaintiff in unit 1.

12      With regard to plaintiff's procedural due process claim, there is an issue of material fact

13  as to whether plaintiff's procedural due process claims were violated. Plaintiff claims that he was

14  never given a written notice of charges before his August 17, 2007 disciplinary hearing. The

15  Fourteenth Amendment affords plaintiff the right to receive advance written notice of the charge,

16  an opportunity to present evidence and call witnesses, and a written statement of the findings.

17  *Wolff v. McDonnell*, 418 U.S. 536, 563-67 (1974). Defendants fail to respond to plaintiff's due

18  process allegations aside from stating that plaintiff "sets forth no more than sweeping conclusory

19  allegations that he was not given due process protections" (#184, p. 8). This statement is

20  insufficient to dispel of the issue of fact as to whether plaintiff was afforded written notice of his

21  disciplinary hearing, as is required by *Wolff*. Plaintiff claims that defendant Burson issued a

22  Notice of Charges against him. However, defendant Brill failed to serve a written copy of the

23  notice before plaintiff's hearing. Defendants do not present any evidence to dispute this statement.

24  Therefore, there is an issue of material fact as to whether plaintiff received a written copy of the

25  Notice of Charges against him before his August 17, 2007 hearing in accordance with procedural

26  due process. As such, defendants' motion for summary judgment is denied as to plaintiff's

27  procedural due process claim in count 16.

28

19

1          5.      **Count 9 - "Deprivation of Civil Rights"**

2          Defendants contend that count 9 should be dismissed because it is duplicative and is not

3   a proper cause of action pursuant to Fed. R. Civ. P. 12(b)(6). The court agrees. In count 9,

4   plaintiff merely re-alleges the claims asserted in counts 1 through 8. Plaintiff includes no separate

5   allegations in count 9. Therefore, defendants motion for summary judgment is granted as to count

6   9 to avoid unnecessary duplication.

7          6.      **Count 12**

8          Defendants assert that count 12 should be dismissed because in includes no separate

9   allegations than those in counts 1 through 11. Therefore, it is duplicative and unnecessary (#129,

10  p. 23). Plaintiff agrees to dismiss count 12 (#182, p. 14). As such, defendants motion for summary

11  judgment is granted as to count 12.

12         7.      **Count 13 - Emotional Distress**

13         Defendants argue that count 13 should be dismissed because the PLRA does not allow for

14  a claim of emotional distress without a showing of physical injury, and plaintiff has not

15  demonstrated that his stress level and loss of sleep are more than *de minimis* (#129, p. 23-24).

16  Plaintiff claims that he has suffered "sleeplessness, physical pain, depression, anxiety [and] panic

17  attacks" as a result of the alleged incident with defendant Taylor (#182, p. 14).

18         The PLRA states: "No federal civil action may be brought by a prisoner confined in a jail,

19  prison, or other correctional facility, for mental or emotional injury suffered while in custody

20  without a prior showing of physical injury." 42 U.S.C. § 1997e(e). The physical injury must be

21  "more than *de minimis*, but need not be significant." *Oliver v. Keller*, 289 F.3d 623, 627 (9th Cir.

22  2002).

23         Plaintiff does not appear to have suffered any physical injury as a result of his contact with

24  defendant Taylor. Rather, he lists physical manifestations of the emotional distress he claims he

25  suffered. Plaintiff has not presented evidence that he suffered actual physical injury, or that he

26  sought medical care to treat any of his alleged physical manifestations of emotional distress. As

27  such, plaintiff has not demonstrated that he suffered more than a *de minimis* physical injury, and

28  his claim for emotional distress is barred. Therefore, defendants' motion for summary judgment

1    is granted as to count 13.

2         **8.    Counts 1, 2, 6, 7, and 8 - Assault, Battery, Negligence, and Privacy claims**

3              Counts 1, 2, 6, 7, and 8 are state tort claims. The court has granted defendants' motion for

4    summary judgment as to all claims that plaintiff's constitutional rights were violated. Therefore,

5    the court no longer has jurisdiction over any supplemental state claims. As such, defendants'

6    motion for summary judgment is granted as to counts 1, 2, 6, 7, and 8.

7                                    **III. CONCLUSION**

8              Based on the foregoing and for good cause appearing, the court concludes:

9         1.    There are no issues of material fact as to plaintiff's Eighth Amendment

10             claims, counts 3, 11, 14, 15, and 16. There is no evidence that plaintiff was the

11             victim of sexual abuse while in prison. Defendants did not fail to protect

12             plaintiff from serious harm. Finally, plaintiff did not suffer any injury from

13             any defect of the fire and smoke warning system at SDCC.

14        2.    There are no issues of material fact as to plaintiff's First Amendment

15             retaliation claims, counts 4, 5, 10, 14, 15, and 16. Plaintiff has not

16             demonstrated a causal connection between his grievances and lawsuits and

17             defendants' actions, nor has plaintiff established that his First Amendment

18             rights were chilled in any way. Finally, plaintiff has not indicated the absence

19             of any legitimate penological interest;

20        3.    Counts 9 and 12 are duplicative, and therefore, are dismissed;

21        4.    There are no issues of material fact as to plaintiff's emotional distress claim,

22             count 13. Plaintiff has not demonstrated that he suffered a physical injury.

23             Therefore, he cannot proceed on a claim for emotional distress damages;

24        5.    Counts 1, 2, 6, 7, and 8 do not state claims of constitutional deprivations.

25             These counts are based entirely on state tort law. As all of plaintiff's

26             constitutional claims have been dismissed, the court cannot assert jurisdiction

27             over the remaining state claims.

28        6.    There is an issue of fact as to plaintiff's procedural due process claim in count

                                        21

1    16; specifically, whether plaintiff was afforded a written copy of the Notice

2    of Charges against him before his disciplinary hearing on August 17, 2007.

3         As such, the court respectfully recommends that defendants' motion to dismiss, or in the

4    alternative, motion for summary judgment (#129) be **GRANTED** as to counts 1-15 and as to

5    plaintiff's retaliation claim in count 16 and **DENIED** as to plaintiff's procedural due process

6    claim in count 16.

7         The parties are advised:

8         1.    Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice,

9    the parties may file specific written objections to this report and recommendation within ten days

10   of receipt.  These objections should be entitled "Objections to Magistrate Judge's Report and

11   Recommendation" and should be accompanied by points and authorities for consideration by the

12   District Court.

13        2.    This report and recommendation is not an appealable order and any notice of appeal

14   pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's

15   judgment.

16                          **IV.  RECOMMENDATION**

17        **IT IS THEREFORE RECOMMENDED** that defendants' motion to dismiss, or in the

18   alternative, motion for summary judgment (#129) be **GRANTED** as to counts 1-15 and as to

19   plaintiff's retaliation claim in count 16 and **DENIED** as to plaintiff's procedural due process

20   claim in count 16.

21        **DATED:** August 5, 2009.

22

23

24                          UNITED STATES MAGISTRATE JUDGE

25

26

27

28