# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

PAUL S. KLEIN,                                )
                                             )        3:08-cv-00191-ECR-VPC
             Plaintiff,                        )
                                             )
      v.                                      )        **REPORT AND RECOMMENDATION**
                                             )        **OF U.S. MAGISTRATE JUDGE**
CLARK COUNTY SCHOOL DISTRICT,                 )
*et al.*,                                     )
                                             )
             Defendants.                       )        December 1, 2010
_____)

      This Report and Recommendation is made to the Honorable Edward C. Reed, Jr., Senior United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4. Before the court is defendants' motion for summary judgment on remaining claim count sixteen (#239).[1] Plaintiff opposed (#244), and defendants did not reply. The court issued a minute order on November 3, 2010, to set a hearing on the instant motion in order to resolve perceived discrepancies in defendants' filings with the court (#246). Defendants filed a clarification to their motion for summary judgment in response to the court's minute order (#249). The court held a hearing on the instant motion on November 17, 2010 (#250). The court has thoroughly reviewed the record and the arguments presented during the hearing and recommends that defendants' motion for summary judgment (#239) be denied.

## I.  HISTORY & PROCEDURAL BACKGROUND

      Plaintiff Paul Klein ("plaintiff"), a *pro se* inmate, is currently incarcerated at Northern Nevada Correctional Center ("NNCC") in the custody of the Nevada Department of Corrections ("NDOC") (#196). Plaintiff brought his original action pursuant to 42 U.S.C. § 1983, alleging that prison officials violated his First Amendment right to free speech, his Eighth Amendment right to be free from cruel and unusual punishment, and his Fourteenth Amendment rights to equal protection and due process while he was incarcerated at Southern Desert Correctional Center ("SDCC") (#12).

---

[1]      Refers to the court's docket numbers.

1    Plaintiff also alleged several violations of state law.  *Id.*

2         Defendants filed a motion to dismiss, or in the alternative, motion for summary judgment on

3    January 28, 2009 (#129).  This court issued a Report and Recommendation granting summary

4    judgment on fifteen of the sixteen counts (#188), which the District Court adopted (#198).  The due

5    process claim within the sixteenth count, the sole remaining issue after adoption of the Report and

6    Recommendation, arose from plaintiff's allegation that when he provided "copies of a legal

7    complaint to Tracy Dory, defendant C. Boren filed a false notice of charges against him, alleging that

8    he compromised staff" (#188, p. 7).  Plaintiff claims that due to printer problems, defendants did not

9    provide him with a copy of the notice of charges prior to his preliminary hearing on July 20, 2007,

10   nor did they provide a copy prior to his disciplinary hearing on August 17, 2007.  *Id.*  Plaintiff was

11   convicted of the charged offense at the disciplinary hearing; however, he appealed and the decision

12   was later dismissed.  *Id.*

13        This court denied summary judgment on the due process issue because "[d]efendants fail[ed]

14   to respond to plaintiff's due process allegations aside from stating that plaintiff 'sets forth no more

15   than sweeping conclusory allegations that he was not given due process protections.'"  *Id.* at 19.

16   Defendants objected to the Report and Recommendation and attached to their objection "a copy of

17   the Notice of Charges served on, and signed for, by Plaintiff on July 20, 2007, before the formal

18   disciplinary hearing occurred on August 17, 2007" (#189, p. 3; #189-1, p. 2-3).[2]  Defendants

19   explained that "[i]t cannot now be disputed that Plaintiff received advanced written notice of the

20   charges against him by being served with a Notice of Charges on July 20, 2007"(#189, p. 3).  Despite

21   this evidence, the District Court adopted this court's Report and Recommendation over defendants'

22   objections because the signed notice of charges submitted with defendants' objection was not before

23   this court when it considered the motion (#198, p. 2).  As the District Court explained: "It would be

24   inappropriate for us to consider such evidence, which should have been presented to the Magistrate

25   Judge in the first instance.  Thus, though Defendants' Objections were timely, they lack merit."  *Id.*

26

27        [2]    Plaintiff's preliminary hearing occurred on July 20, 2007, at 11:53 p.m. (#189-1, p. 4).  The

28   notice of charges submitted with defendants' objection to the Report and Recommendation shows that
     plaintiff signed the notice of charges at 11:30 p.m. the same night.  *Id.* at 5.

1    Defendants' instant motion again seeks summary judgment on claim sixteen; however, in this

2    motion, defendants state that "Plaintiff was not served a copy of the notice of charge prior to his

3    preliminary hearing July 20, 2007 because [the] copier was out of order" (#239, p. 2).  Instead,

4    defendants explain, plaintiff was presented with a copy of the notice of charges on August 8, 2007,

5    prior to his disciplinary hearing on August 17, 2007.  *Id.*  Defendants point to Exhibit A to support

6    this proposition, but the court's review of Exhibit A only reveals an unsigned version of the notice

7    of charges and unsigned versions of the summaries of hearings (#239-1).  The court cannot

8    determine from these attachments when or if plaintiff ever received a copy of the notice of charges.

9    Further, it is inconsistent that defendants included a signed version of the notice of charges, dated

10   July 20, 2007, in their objection to the Report and Recommendation, but now defendants claim

11   NDOC served the notice of charges on August 8, 2007, but they do not provide a signed copy with

12   that date.

13       Citing this inconsistency, the court issued a minute order on November 3, 2010, to set a

14   hearing on defendants' motion "to clarify the sequence of events which occurred in this case" (#246).

15   On November 16, 2010, one day prior to the hearing, defendants submitted a clarification to their

16   motion for summary judgment (#249).  In their clarification, defendants explain that "Senior

17   Correctional Officer Brill personally served inmate Klein on July 20, 2007, with the Notice of

18   Charges in question, and inmate Klein signed the Notice of Charges the same day."  *Id.* at 2.

19   Defendants go on to explain that plaintiff was not provided a copy of the signed notice of charges

20   at that time due to a copier malfunction, but that defendants provided him with a copy of the notice

21   of charges on August 7, 2007.  *Id.*  Plaintiff's disciplinary hearing took place ten days later.  *Id.*

22   Defendants also explained that any inconsistencies in the documents provided to the court were "due

23   simply to the source of each document."  *Id.* at 5.  Defendants state that they obtained the copy of

24   the notice of charges provided in their objection to the Report and Recommendation from plaintiff's

25   hard paper file, while the copy of the notice of charges attached to defendants' motion for summary

26   judgment was obtained from the NOTIS system.  *Id.*

27       On November 17, 2010, the court held a hearing on defendants' motion for summary

28   judgment (#250). Defendants produced original copies of the following documents: (1) Disciplinary

1   Form I Notice of Charges, signed by plaintiff on July 20, 2007, with a run date of July 19, 2007;[3]

2   (2) Disciplinary Form II Summary of Hearing Officer's Inquiry and Disposition, signed by plaintiff

3   on July 20, 2007, with a run date of July 21, 2007; and (3) Disciplinary Form III Summary of

4   Disciplinary Hearing, signed by plaintiff on August 17, 2007, with a run date of August 17, 2007.

5   *Id.* at 3-21.  During the hearing, the court and parties acknowledged several inconsistencies between

6   the original documents and copies provided to the court.  Further, the court questioned parties

7   regarding differences between statements made in the briefing and documents provided to the court.

8   The court ordered defendants to produce the audio tape of plaintiff's disciplinary hearing for its *in*

9   *camera* review.  *Id.* at 2.

10      Based on the court's understanding of the briefing, information presented in the hearing

11  including the original disciplinary documents relevant to this dispute, and review of the tape of

12  plaintiff's disciplinary hearing on August 17, 2007, the court identified the following list of

13  discrepancies and inconsistencies:

14      (1) Defendants attached a copy of plaintiff's inmate issue history to their motion for
        summary judgment (#239-1).  The entry from August 23, 2007, states: "It is clearly
15      noted that S C/O Brill was contacted and did not recall serving [plaintiff] the Notice
        of Charges."  Over three years later, on November 9, 2010, defendant Brill provided
16      an affidavit to this court, attached to the defendants' clarification of its motion that
        states he "recalls personally serving Inmate Paul Scott Klein on July 20, 2007, with
17      a Notice of Charges for MJ51-Compromising Staff and MJ42-Unauthorized Contact
        with Staff (#249-1).
18
        (2) Plaintiff claims defendants "erased the August 17, 2007 disciplinary hearing tape
19      at the portions wherein Cheryl Burson order[ed] Plaintiff found guilty, Sr C/O Brill
        admits to not serving Plaintiff with the Notice of Charges and Sgt Shubert's refusal
20      to contact witnesses Tracy Dory, R. Kenmore and nurse Chuck" (#244, p. 3).  The
        court reviewed the tape and notes that the recording of the hearing ends midway
21      through plaintiff's statement and does not include any of the detail plaintiff
        mentioned in his briefing.
22
        (3) Plaintiff claims he "never appended his signature to any document, disciplinary
23      document except for the August 17, 2007 disciplinary form" (#244, p. 3).  The court
        reviewed the original forms provided by defendants and notes that a signature
24      appears on the "signature of inmate" line on Disciplinary Form I Notice of Charges,
        Disciplinary Form II Summary of Hearing Officer's Inquiry and Disposition, and
25

26  _____

27      [3]      The court notes run dates on the forms throughout this Report and Recommendation because
    the run dates differ between the forms attached to defendants' motion and those provided to the court at the
    November 17, 2010 hearing.  However, the court is unsure as to whether the run date refers to the date the
28  form was printed, the date of last modification, or another such designation.

4

Disciplinary Form III Summary of Disciplinary Hearing (#250, p. 4, 6, 11). The court notes that the signatures are not identical to each other.

(4) The court identified the following additional discrepancies between the forms attached to defendants' motion and the original forms provided by defendants at the November 17, 2010 hearing:

    a.  Disciplinary Form I Notice of Charges:

        i.  The original form includes a strike-out and handwritten note in the "current location" section of the form (#250, p. 3 *cf.* #239-1, p. 4).

        ii.  The "service of notice of charges" section of the original form is completed (#250, p. 4 *cf.* #239-1, p. 5).

        iii.  The run date on the original form is July 19, 2007 at 2:33pm, while the run date on the form appended to defendants' motion is July 22, 2008 at 6:19pm (#250, p. 3-4 *cf.* #239-1, p. 4-5).

    b.  Disciplinary Form II Summary of Hearing Officer's Inquiry and Disposition:

        i.  The original form does not include a "statement of offender," while the form attached to defendants' motion includes such a statement (#250, p. 5 *cf.* #239-1, p. 6). Notably the "statement of offender" included in the attached version of the form is identical to the statement provided by plaintiff at the August 17, 2007 disciplinary hearing and included on Disciplinary Hearing Form III (#250, p. 8; #239-1, p. 9 *cf.* #239-1, p. 6).

        ii.  The original form does not include a statement that appears to have been typed into the top portion of the version attached to defendants' motion. The statement reads: "Inmate Klein, Paul # 30918 was afforded a Preliminary Hearing on 7/20/2009 at 23:53am conducted by SC/O Brill. On this date the copier would not work to give Inmate Klein a copy. On 8.7.2007 Inmate Klein was provided a copy of the NOC" (#250, p. 5 *cf.* #239-1, p. 6).

        iii.  The caption on the original form includes the typographical error, "Disciplinary From [sic] II," while the caption on the form attached to defendants' motion reads, "Disciplinary Form II" (#250, p. 5-6 *cf.* #239-1, p. 6-7).

        iv.  The run date on the original form is July 21, 2007 at 12:04am, while the run date on the form appended to defendants' motion is July 22, 2008 at 6:15pm (#250, p. 5-6 *cf.* #239-1, p. 6-7). Notably, plaintiff signed the original form on July 20, 2007; however, the run date of the form was one day later on July 21, 2007 (#250, p. 6).

    c.  Disciplinary Form III Summary of Disciplinary Hearing:

        i.  The original form includes handwritten notes under the "Additional Hearing Information," "Results of Disciplinary Hearing," and "Ancillary Information and Instructions" sections (#250, p. 7, 10 *cf.* #239-1, p. 8, 11).

1
2
3

      ii.  The caption on the original form includes the typographical error, "Disciplinary From [sic] III," while the caption on the form attached to defendants' motion reads, "Disciplinary Form III" (#250, p. 7-11 *cf.* #239-1, p. 8-11).

4
5
6

      iii.  The run date on the original form is August 17, 2007 at 2:08pm, while the run date on the form appended to defendants' motion is July 22, 2008 at 6:18pm (#250, p. 7-11 *cf.* #239-1, p. 8-11).  Notably, plaintiff signed the original form on August 17, 2007 at 12:49pm; however, the run date of the form was over an hour later at 2:08 pm (#250, p. 11).

7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22

      Defendants acknowledge that NDOC dismissed the notice of charges "based upon the failure to serve Plaintiff his Notice of Charges prior to the preliminary hearing," and they argue that as a result plaintiff's due process rights were not violated (#239, p. 7).  They argue further that defendants are entitled to qualified immunity because "it would not have been clear to a correctional officer that Plaintiff's due process rights might be violated due to issues with a copier." *Id.* at 7.  Plaintiff claims that defendants were "fully" aware that he "was to be given a notice of the charges against him" and that he "was to be given 24 hours in which to prepare for the disciplinary hearing after his reciept [sic] of the notice of the charges against him" (#244, p. 4).  Defendants do not provide any facts related to the steps NDOC took following dismissal of the notice of charges.  However, plaintiff claims that upon placement in administrative segregation, a decision NDOC based upon the notice of charges in question, he lost ten days of "good/stat time," ten days of work time, additional days that were taken or revoked several months after dismissal of the charges, and plaintiff was not immediately returned to Level 1 housing (#244, p. 9-10).  At the hearing, defendants noted that they failed to restore plaintiff's stat time following his successful appeal, but told the court this time would be returned despite the two-year delay in addressing the issue (#251, p. 25).  Defendants have not supplied the court with evidence that plaintiff's time has been restored.

23
24
25
26

      The court notes that the plaintiff is proceeding *pro se*.  "In civil rights cases where the plaintiff appears *pro se*, the court must construe the pleadings liberally and must afford plaintiff the benefit of any doubt."  *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 623 (9th Cir. 1988); *see also Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).

27  ///
28  ///

**II.  DISCUSSION & ANALYSIS**

**A.  Discussion**

      **1.  Summary Judgment Standard**

      Summary judgment allows courts to avoid unnecessary trials where no material factual disputes exist.  *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). The court grants summary judgment if no genuine issues of material fact remain in dispute and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The court must view all evidence and any inferences arising from the evidence in the light most favorable to the nonmoving party.  *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996).  However, the Supreme Court has noted:

> [W]e must distinguish between evidence of disputed facts and disputed matters of professional judgment.  In respect to the latter, our inferences must accord deference to the views of prison authorities.  Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage.

*Beard v. Banks*, 548 U.S. 521, 530 (2006).  Where reasonable minds could differ on the material facts at issue, however, summary judgment should not be granted.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986).

      The moving party bears the burden of informing the court of the basis for its motion, and submitting evidence which demonstrates the absence of any genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the moving party has met its burden, the party opposing the motion may not rest upon mere allegations or denials in the pleadings but must set forth specific facts showing that there exists a genuine issue for trial.  *Anderson*, 477 U.S. at 248.  Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  *Celotex*, 477 U.S. at 322-23.

**B.  Analysis**

      Defendants claim that plaintiff's due process rights were not violated because he was provided with a copy of the notice of charges ten days prior to his hearing (#239, p. 2).  Defendants

7

1    further state that they are protected by qualified immunity for any violations which may have resulted

2    from the copier malfunction and that prevented plaintiff from timely receiving a copy of the notice

3    of charges. *Id.* at 7.  Plaintiff alleges that he never received a copy of the notice of charges prior to

4    his disciplinary hearing (#244, p. 2).  Further, plaintiff argues that he was unable to call witnesses

5    at his disciplinary hearing and that as a result of the disciplinary action taken by defendants he lost

6    stat/good time that has not yet been restored. *Id.* at 3, 9-10.

7        **1.    Due Process**

8        The Due Process Clause of the Fourteenth Amendment protects individuals from arbitrary

9    government action by prohibiting states from depriving people of "life, liberty, or property without

10   due process of law."  U.S. Const. amend. XIV.  In order to prevail on a claim of deprivation of

11   liberty without due process of law, a plaintiff must first establish the existence of a liberty interest.

12   After meeting this threshold requirement, the plaintiff must then demonstrate that defendants failed

13   to provide the process due. *Wolff v. McDonnell*, 418 U.S. 539 (1974).

14       Liberty interests may arise from the Due Process Clause itself or from state law. *Hewitt v.*

15   *Helms*, 459 U.S. 460, 466-68 (1983), *abrogated in part on other grounds by Sandin v. Conner*, 515

16   U.S. 472 (1995).  Under *Sandin*, a factual comparison must be made between the conditions in

17   general prison population and the challenged condition, "examining the hardship caused by the

18   prisoner's challenged action in relation to the basic conditions of life as a prisoner." *Jackson v.*

19   *Carey*, 353 F.3d 750, 755 (9th Cir. 2003).  There is no single standard for this comparison; instead,

20   courts examine the "condition or a combination of conditions or factors" case by case. *Kennan v.*

21   *Hall*, 83 F.3d 1083, 1089 (9th Cir. 1996).  Specifically, courts consider three factors in undertaking

22   this analysis: (1) whether the challenged sanction "mirrored those conditions imposed upon inmates

23   in administrative segregation and protective custody" demonstrating that the prison acted within its

24   discretionary authority; (2) the duration of the sanction; and (3) whether the sanctions will affect the

25   length of the prisoner's sentence. *Serrano v. Francis*, 345 F.3d 1071, 1078 (9th Cir. 2003).

26       Notably, *Sandin* did not alter the Supreme Court's ruling in *Wolff*, which held that state law

27   creates a liberty interest in inmates' accumulation of good-time credits. *Wolff*, 418 U.S. at 556-57.

28   Therefore, if an inmate challenges a prison's disciplinary action because it results in the forfeiture

1    of his good-time credits thereby increasing the length of his sentence, a liberty interest is recognized

2    under *Wolff* and *Sandin*.  This liberty interest triggers the due process guarantees available to inmates

3    under *Wolff*, including: (1) advanced, written notice of the charges; (2) no less than twenty-four

4    hours between notice of the charges and the disciplinary hearing; (3) a written statement provided

5    by the factfinders detailing the evidence relied upon and the reasons for disciplinary action; (4) the

6    inmate's ability to call witnesses and to present evidence, provided such action does not compromise

7    prison safety; and (5) the right to legal assistance if the legal issues are complex or the inmate is

8    illiterate.  *Id.* at 563-70.

9          In this case, plaintiff alleges loss of his good-time credits as a result of the deprivation of his

10   due process rights.  Defendants' counsel acknowledged the loss of plaintiff's good-time credits at

11   the November 17, 2010 hearing.  Though counsel indicated at the hearing that she intended to

12   contact NDOC to restore plaintiff's credits, the court has no indication that plaintiff's time was

13   indeed restored.  Therefore, the court proceeds with its analysis with the understanding that plaintiff

14   and defendants agree that plaintiff lost good-time credit due to defendants' disciplinary action against

15   him.  As such, the court finds that plaintiff has a liberty interest in the accumulation of good time.

16         Given plaintiff's liberty interest, the court's analysis turns to the process due to plaintiff.

17   Defendants owed plaintiff the five due process guarantees articulated in *Wolff*.  The key inquiry in

18   this case is whether defendants provided plaintiff with advanced, written notice of the charges

19   against him at least twenty-four hours prior to his disciplinary hearing.  Further, plaintiff claims he

20   was unable to call witnesses at his hearing.  The court notes that defendants provided a copy of the

21   summary of the disciplinary hearing, which plaintiff claims he signed, satisfying the requirement that

22   defendants provide a written statement of the factfinders detailing the evidence relied upon and the

23   reasons for disciplinary action.  Additionally, plaintiff is not illiterate, nor does this case present a

24   complex legal issue warranting the assistance of legal counsel.

25         As the court outlines in detail in this Report and Recommendation, there are several

26   inconsistencies between the original disciplinary documents in plaintiff's hard file and versions of

27   the same documents pulled from the NOTIS system that were provided to the court as attachments

28   to defendants' motion.  Of particular concern to the court is defendants' evolving argument

regarding service of plaintiff's notice of charges and the changes to disciplinary forms that appear to have occurred over time.  Further, the court is unable to clarify the situation by listening to the tape of the disciplinary hearing, as the tape of the hearing cuts off in the middle of plaintiff's statement.  Given these inconsistencies and defendants' inability to address these issues at the November 17, 2010 hearing, or by furnishing a tape of the entire disciplinary hearing, the court cannot construct an accurate picture of the sequence of events that occurred in this case.

Specifically, it is not clear whether defendants served plaintiff with the notice of charges on July 20, 2007, or August 2, 2007, or whether they failed to serve plaintiff with the notice of charges.  At the time of the incident, prison officials noted in the NOTIS system that defendant Brill did not recall serving plaintiff with the notice of charges; however, over three years later, defendant Brill now provides the court with an affidavit claiming that he recalls personally serving plaintiff with the notice of charges.  Plaintiff claims defendants never served him with the notice of charges and further alleges that defendants forged his signature on the notice of charges.  Further, plaintiff claims he was not permitted to call witnesses at his disciplinary hearing.  Defendants do not address this allegation and the court is unable to investigate the claim as the tape of the disciplinary hearing provided by defendants is incomplete.

Given the numerous inconsistencies in the forms defendants provided to the court, the fact that the tape of the disciplinary hearing provided to the court by defendants is incomplete, and the outstanding questions regarding the evolving nature of the argument presented by defendants, the court is unwilling to grant summary judgment for defendants on the remaining due process claim.

**2.      Qualified Immunity**

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Clouthier v. County of Contra Costa*, 591 F.3d 1232, 1240 (9th Cir. 2010) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).  "In considering a claim of qualified immunity, the court must determine 'whether the facts that plaintiff has alleged . . . make out a violation of a constitutional right,' and 'whether the right at issue was clearly established at the time of the defendant's alleged

1  misconduct.'" *Id.* (quoting *Pearson v. Callahan*, --- U.S. ----, 129 S.Ct. 808, 815, (2009)).  Whether

2  a right is clearly established turns on the "objective legal reasonableness of the action, assessed in

3  light of the legal rules that were clearly established at the time it was taken." *Id.*  "[A]ll but the

4  plainly incompetent or those who knowingly violate the law have immunity from suit; officers can

5  have a reasonable, but mistaken, belief about the facts or about what the law requires in any given

6  situation." *Id.*

7          Here, as suggested above, there are outstanding questions of material fact regarding the

8  conduct of defendants.  Specifically, there are several inconsistencies in the evidence supplied by

9  defendants that prevent the court from concluding definitively that defendants' actions were

10  objectively reasonable in light of due process requirements.  In fact, one reading of the evidence

11  could lead the court to determine that defendants' conduct violated prison procedure, state law, and

12  plaintiff's constitutional rights.  On the other hand, upon review of defendants' explanation of the

13  cited discrepancies, the court could alternately conclude that defendants' acted reasonably in light

14  of the circumstances.  It is incumbent upon defendants' counsel, as an officer of the court, and the

15  defendants themselves, to investigate these inconsistencies, given the serious nature of what may

16  have occurred in this proceeding.  There are simply too many unanswered questions regarding

17  defendants' conduct to apply the shield of qualified immunity.  Therefore, the court declines to grant

18  summary judgment to defendants based on qualified immunity.

19                          **III. CONCLUSION**

20          Based on the foregoing and for good cause appearing, the court concludes that there are

21  several outstanding questions of material fact regarding the remaining due process claims, including

22  important evidentiary questions that defendants must address.  Therefore, the court recommends that

23  summary judgment for the defendants be **DENIED**.  The parties are advised:

24          1.      Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice,

25  the parties may file specific written objections to this report and recommendation within fourteen

26  days of receipt.  These objections should be entitled "Objections to Magistrate Judge's Report and

27  Recommendation" and should be accompanied by points and authorities for consideration by the

28  District Court.

2. This report and recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

### IV.  RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that defendants' motion for summary judgment on remaining claim count 16 (#239) be **DENIED**.

**DATED**: December 2, 2010.

_Valerie P. Cooke_
_____
**UNITED STATES MAGISTRATE JUDGE**

12